UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICK LYNCH,

                Plaintiff,        CV 04-1716-HA

    v.

                                      OPINION AND ORDER

ALASKA TANKER COMPANY,

                Defendant.

---

    Craig Alan Crispin
    Crispin & Associates
    9600 SW Oak Street, Suite 280
    Portland, Oregon 97223

    Deborah Kochan

1     - OPINION AND ORDER

Mathew Stephenson
Kochan & Stephenson
260 California Street Suite 803
San Francisco, California 94111
    Attorneys for Plaintiff

Daniel F. Knox
Noah Jarrett
Schwabe Williamson & Wyatt, PC
1600-1900 Pacwest Center
1211 SW Fifth Avenue
Portland, Oregon 97204
    Attorneys for Defendant

HAGGERTY, Chief Judge:

Plaintiff Patrick Lynch filed this case in the Northern District of California, alleging vessel negligence under the Jones Act, "unseaworthiness," and violations of 42 U.S.C. § 2000e, *et seq.* (Title VII) for disparate treatment and retaliation. Defendant Alaska Tanker Company, LLC filed a Motion for Summary Judgment, a Motion to Dismiss for Improper Venue, and in the alternative, a Motion to Transfer Venue. Judge Willken of the Northern District of California denied the Motion to Dismiss, granted the Motion to Transfer Venue and granted the Motion for Summary Judgment with respect to the Jones Act and unseaworthiness claims because they were conceded by plaintiff. Judge Wilken deferred ruling on the Motion for Summary Judgment with respect to the Title VII claims as venue was proper in the District of Oregon. This court heard oral arguments on September 12, 2005.

## FACTUAL BACKGROUND

Defendant, an Oregon corporation with its principal place of business in Beaverton, Oregon, transports crude oil between Alaska, the western coast of the United States, and Hawaii. In February 2002, plaintiff worked for defendant as a merchant seaman aboard the defendant-

owned SS KENAI.  On February 23, 2002, plaintiff was onboard a small vessel launch that was returning to the SS KENAI after a day of shore leave in Port Angeles, Washington.  Plaintiff got into an argument with another seaman, Charles Walker (Walker), that soon escalated into a physical altercation.  Plaintiff alleges that Walker physically assaulted him and subjected him to racial epithets.  Plaintiff is Filipino American and Walker is African American.

The next day, Chief Engineer John Metzger (Metzger) reported to Captain Richard Holman that Lynch complained of feeling "threatened" by having to stand watch with Walker.  Declaration of Richard A. Holman (Holman Decl.), ¶ 4.  Captain Holman began an investigation into the altercation.  He interviewed other seamen who were aboard the launch, and collected written statements.  He later discharged both plaintiff and Walker for fighting.

On June 18, 2002, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against defendant.  In the course of its investigation, the EEOC did not contact or interview any employee of defendant.

On October 15, 2002 defendant rehired plaintiff and reimbursed him for wages and benefits for the period between February 25 through October 15, 2002.  Plaintiff has been continually employed by defendant since January 2003.

**STANDARDS**

Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party has the burden of

demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. Fed. R. Civ. P. 56(c).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Such an issue of fact is only a genuine issue if it can reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250-51. This burden to demonstrate a genuine issue of fact increases where the factual context makes the non-moving party's claim implausible. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). In other words, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

<u>Title VII Disparate Treatment</u>

To establish a *prima facie* case of disparate treatment under Title VII, a plaintiff must supply evidence that gives rise to an inference of unlawful discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In the absence of direct evidence of discrimination, the plaintiff may prove his or her case through circumstantial evidence, following

the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). In that case, the Supreme Court set forth a list of elements that a Title VII plaintiff must meet to present a *prima facie* case of discrimination. The list is not rigid, but is meant to be adaptable to the specific factual circumstances of each case. *Sanghvi v. City of Claremont*, 328 F.3d 532, 536 n.4 (recognizing that the *McDonnell Douglas* framework should not be applied in a "rigid, mechanized, or ritualistic" manner). Generally, the elements are: (1) membership in a protected class; (2) qualification for the employee's position of employment; (3) subjection to an unfavorable employment decision; and (4) a showing that the employer treated the plaintiff-employee different than other similarly situated employees. *McDonnell Douglas*, 411 U.S. at 802.

Once the plaintiff has established the *prima facie* case, there is a rebuttable "presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254. The burden of production shifts to the employer "to articulate a legitimate, nondiscriminatory reason for the plaintiff's rejection." *Warren v. City of Carlsbad*, 58 F.3d 439, 442 (9th Cir. 1995). "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 255.

If the employer sustains this burden, the burden of production returns to the plaintiff, who must then show that the proffered reason is pretextual. *Id.* at 256. Although the burden of persuasion at all times remains with the plaintiff, *id.* at 253, this final burden shift does not necessarily impose a new burden of production. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000), *accord Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) ("[A] disparate treatment plaintiff can survive summary judgment without

producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of fact regarding the truth of the employer's proffered reasons.").

The plaintiff can prove pretext either by indirectly showing that the employer's propounded explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or by directly showing that unlawful discrimination more likely than not motivated the employer. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-22 (9th Cir. 1998). "Circumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001) (citing *Godwin*, 150 F.3d at 1222).

### Title VII Retaliation

To establish a *prima facie case* of retaliation under Title VII, a plaintiff must demonstrate that (1) he or she was engaging in a protected activity, (2) the employer subjected him or her to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action. *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) (citation omitted). If the plaintiff asserts a *prima facie* retaliation claim, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (citing *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1264 (9th Cir. 1997)). If the defendant employer articulates such a reason, the burden returns to the plaintiff to demonstrate that the proffered reason is merely pretextual. *Id.*

## DISCUSSION

6      - OPINION AND ORDER

Plaintiff alleges discrimination on the basis of race and/or national origin and a retaliation claim in violation of Title VII, and seeks punitive damages. All other claims have been dismissed by prior order of the United States District Court for the Northern District of California. Plaintiff alleges that defendant did not fire him for fighting, but rather because of defendant's fear of firing an African American employee and retaining a non-African American employee. Plaintiff also argues that defendant retaliated against him when he complained to defendant about Walker's behavior.

Defendant argues that plaintiff is unable to establish a *prima facie* case of disparate treatment under Title VII because similarly situated employees of defendant have been disciplined in precisely the same manner as were plaintiff and Walker. Furthermore, defendant maintains that its true reason for firing plaintiff was that he engaged in an altercation and violated the company policy against fighting, which is a legitimate, non-discriminatory reason. In response to plaintiff's retaliation claim, defendant argues that plaintiff was not engaged in any protected activity and he did not complain to Captain Holman or any other officer regarding any allegations of racial discrimination or harassment.

Title VII Disparate Treatment Claim

The parties present no dispute regarding whether plaintiff meets the first three elements of a *prima facie* case of disparate treatment: (1) he is a member of a protected class; (2) he was performing his job satisfactorily; and (3) he was terminated. *See McDonnell Douglas*, 411 U.S. at 802. Only the fourth element – whether defendant treated him differently than other similarly situated employees – is challenged.

Employees are similarly situated when they hold similar jobs and display similar conduct. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (citing *Gerdom v. Cont'l Airlines, Inc.*, 692 F.2d 602, 609 (9th Cir. 1982) (en banc)); *see also Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 659 (6th Cir. 1999) (holding that, to be similarly situated, an employee must have the same supervisor, be subject to the same standards, and have engaged in the same conduct).

The evidence presented indicates that shortly before midnight on February 23, 2002, a group of merchant seamen was on board a vessel launch returning to SS KENAI. Plaintiff was sitting by himself when Walker began making derogatory remarks to him and used a racial epithet. Plaintiff did not respond. Moments later, Walker repeated the comments. Plaintiff then made derogatory remarks and pointed at Walker, nearly touching his face. Walker stood, followed by plaintiff, and a heated exchange took place. The two men were convinced to sit back down, but Walker continued the verbal altercation. Plaintiff responded with derogatory remarks. Walker stood up again and grabbed plaintiff by his shirt and his jaw until a third seaman intervened and broke up the confrontation.

The next morning, Metzger reported to Captain Holman that plaintiff felt threatened by having to stand watch next to Walker. Captain Holman investigated the altercation, conducting interviews and collecting written statements. None of the statements indicated that Walker had used a racial epithet. Later that day, Captain Holman concluded that plaintiff and Walker were fighting with each other and terminated their employment.

Defendant has a policy against fighting. Holman Decl., ¶ 7; Ex. B ("Members of the crew of this vessel may be discharged without notice for . . . . Fighting or attempting or

threatening violence to another . . . ."). Under the policy, the vessel master has the discretion to terminate any crew member who engages in fighting. *Id.* At the time of the fight, it was defendant's policy, practice, and regulation for the master to terminate both seamen that were found to have engaged in fighting. *Id.* at ¶ 8.

Captain Holman terminated plaintiff by reading aloud to him his Letter of Dismissal. Plaintiff told Captain Holman that he had not done anything wrong, that Walker was the instigator, and that Walker had used a racial epithet. Captain Holman responded that even if Walker was the instigator, plaintiff had engaged in fighting, contrary to defendant's policy. According to plaintiff, Captain Holman ended the conversation by telling plaintiff, "As much as I'd like to keep you, you're a good worker, everybody likes you, I cannot fire him and keep you." Compl., ¶ 9. Plaintiff interprets this statement as meaning that the captain was afraid of a lawsuit if he fired an African American employee but retained a Filipino American employee.

Prior to plaintiff's termination, defendant's vessel masters had fired other seamen for fighting. In April 2001, one seaman complained that another had shoved him off of a chair and threatened his life. Both men were terminated. In October 2001, two seamen admitted to fighting. The vessel master fired both.

However, in May 2004, two years after plaintiff's termination, there was an altercation between two Filipino seamen which resulted in one being terminated and the other receiving only a written warning. The two men were seated at the dining table, one made a derogatory comment to the other, and the other responded in kind. The first seaman then physically assaulted his seated shipmate. The physical aggressor was terminated but the one who engaged in only verbal banter was given a written warning and allowed to remain aboard the vessel.

9       - OPINION AND ORDER

The court finds the May 2004 situation to be distinguishable from plaintiff's. Plaintiff engaged in a continuing, escalating verbal banter which led to the physical altercation. Additionally, plaintiff was physically engaged, pointing his finger toward Walker's face and standing up at one point during the exchange. Although plaintiff was seated at the time Walker grabbed him by the jaw and was compelled to defend himself, plaintiff was an active participant throughout the escalating altercation. The assaulted seaman in 2004 made a single comment and was immediately assaulted. The situations are not analogous.

As plaintiff was not treated differently from similarly situated employees, the court finds that he has not sufficiently pled a *prima facie* case of disparate treatment. Summary judgment is appropriate. *See McDonnell Douglas*, 411 U.S. at 802.

Even if plaintiff had sufficiently pled a *prima facie* case of disparate treatment, summary judgment would still be appropriate. As noted above, once a *prima facie* case is pled, the burden is then on the defendant to articulate a legitimate, nondiscriminatory reason for terminating plaintiff's employment. *See Warren*, 58 F.3d at 442. Defendant has met this burden. *See Burdine*, 450 U.S. at 257 (to meet its burden, the defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."). Here, defendant presented sufficient evidence that plaintiff engaged in fighting in contravention of company policy, and the burden shifts back to plaintiff to show that defendant's proffered reason is pretextual.

Plaintiff does not quarrel with the assertion that he was involved in a verbal altercation with Walker, or that he pointed his finger at Walker, nearly brushing his cheek. Plaintiff nevertheless argues that defendant's explanation of fighting as the reason for his termination is

pretextual. Plaintiff relies on his interpretation of Captain Holman's statement, "As much as I'd like to keep you, you're a good worker, everybody likes you, I cannot fire [Walker] and keep you," Compl., ¶ 9, for the proposition that a discriminatory intent more likely than not motivated defendant's decision. Plaintiff suggests that what Captain Holman meant was "because Walker is Black, the fact that [you are] not [is] a motivating factor in [my] decision to terminate [you]." Compl., ¶ 13. This is far from the "specific and substantial" evidence needed to survive summary judgment. *Bergene*, 272 F.3d at 1142.

Plaintiff ignores the possibility that Captain Holman's statement was actually in reference to defendant's policy of terminating *any* employee who engaged in fighting, and its practice, at the time, of firing *all* persons involved in *any* act of fighting. *See* Deposition of William Cole (Cole Dep.), 18:15-19 ("The policy is directed at acts *or attempted acts* of physical violence.") (emphasis added); *see also* Deposition of Richard Holman (Holman Dep.), 38:18-39:15 (the company's policy against fighting extended beyond the physical act to include purely verbal engagement); Holman Dep. 29:11-13 ("Fighting can be verbal, physical contact, can be anything that can escalate into potential physical contact."); Cole Dep. 112:12-14 (the term "fighting" as used in the policy is not restrictively described). Defendant's response to the May 2004 incident suggests that defendant realized the harshness of its practice of firing all persons engaged in any fighting, and changed the policy, allowing non-aggressors to avoid termination.

To find pretext would require this court to assume, without any supporting evidence, that Walker would bring a wrongful termination lawsuit because he is African American and that, aware of this fact, defendant terminated plaintiff to prevent a potential lawsuit by Walker. Plaintiff has presented no evidence that Captain Holman harbored these assumptions about

Walker, or, moreover, that Captain Holman seized on plaintiff's race as an opportunity to legitimize terminating an African American. "At summary judgment, this court need not draw *all* possible inferences in [plaintiff's] favor, but only all *reasonable* ones." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) (emphasis in original) (citing *O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1466-67 (9th Cir. 1986) ("We scrutinize the evidence and reasonable inferences to determine whether there is sufficient probative evidence to permit a finding in favor of the opposing party based on more than mere speculation, conjecture, or fantasy.")).

In addition, the Letter of Determination issued by the EEOC finding that plaintiff's allegations were credible is insufficient to create a genuine issue of material fact. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1284 (9th Cir. 2000); s*ee also Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 201-02 (5th Cir. 1992); *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (recognizing that when EEOC letters contain only bare conclusions, they have little probative value).

An essential element of plaintiff's disparate treatment claim is defendant's motivation and intent to discriminate against him based on his race or national origin. Wile a plaintiff's discharge may be unfair, it is not necessarily pretextual. See *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1012 n.12 (7th Cir. 1999) (noting the question is not "whether engaging in an altercation is or is not an appropriate ground for discharge," but "whether the stated ground is the real reason" for the discharge and "absent some proof that [defendant] itself did not genuinely believe that the fight warranted discharge . . . we cannot say that the reason for [plaintiff's] discharge was pretextual simply because the company may have been unfair"). Plaintiff has

12  - OPINION AND ORDER

failed to make a showing sufficient to establish a genuine dispute of fact with respect to defendant's motivation or intent. Summary judgment as to the Title VII disparate treatment claim is compelled.

Title VII Retaliation Claim

Plaintiff's retaliation claim is based on Walker's racially harassing conduct towards plaintiff the night of the altercation. Plaintiff asserts he opposed this practice by complaining to Holman during his termination meeting, after which he was fired.

As noted above, to present a *prima facie* case of retaliation, the plaintiff must show that (1) he or she was engaging in a protected activity, (2) he or she suffered an adverse employment action, and (3) there was a causal link between the activity and the employment action. *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) (citation omitted). Once a *prima facie* case is established, then *McDonnell Douglas* burden shifting is appropriate. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (citing *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1264 (9th Cir. 1997)).

There is no dispute that plaintiff suffered an adverse employment action. However, plaintiff has failed to establish the other two required elements. To meet the first element, a plaintiff must show that he or she had a reasonable belief that the conduct opposed was prohibited under Title VII. *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) (citations omitted). There is no evidence that plaintiff reasonably believed Walker's behavior constituted a violation of Title VII, or that he was concerned about discrimination when he discussed the altercation with Captain Holman. *See Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411-12 (9th cir. 1987) (finding that a Hispanic radio personality who opposed an English-

13      - OPINION AND ORDER

only policy and commented that his ratings were largely from the Hispanic population was concerned about his personal radio success and not about "discrimination against him or other Hispanics").

Even if plaintiff could be said to have engaged in a protected activity, he has not proffered evidence sufficient to establish the third element of causation. To show causation, plaintiff "must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for his firing and that but for such activity he would not have been fired." *Villiarimo*, 281 F.3d at 1064-65 (citation omitted). There is no evidence that defendant would not have terminated plaintiff but for his complaining of Walker's racial remarks.

Even assuming that plaintiff established a *prima facie* case of retaliation, defendant is afforded an opportunity to articulate some legitimate, nondiscriminatory reason for the adverse employment decision. For the reasons provided above, the court finds that defendant has met this requirement. The burden returns to plaintiff to "prove by a preponderance of the evidence that the proffered reasons are pretexts for retaliation or that a discriminatory reason more likely motivated the employer's action." *Tarin*, 123 F.3d at 1264 (citation omitted). As concluded above, plaintiff has failed to show that defendant's proffered explanation for plaintiff's termination is inconsistent or unworthy of credence.

///

///

///

## **CONCLUSION**

14      - OPINION AND ORDER

For the foregoing reasons, defendant's Motion for Summary Judgment (Doc. # 19) is GRANTED. All other motions are denied as moot.

IT IS SO ORDERED.

Dated this 26 day of September 2005.

/s/Ancer L.Haggerty
ANCER L. HAGGERTY
United States District Judge

15   - OPINION AND ORDER